# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **ROBERT KAIN** and **JEFFREY SALMON**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENV SERVICES INC., <br><br> Defendant. | CASE NO. 1:20-cv-988 <br><br> Judge Timothy S. Black <br> Magistrate Judge Stephanie K. Bowman <br><br> **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |

Representative Plaintiffs Robert Kain and Jeffrey Salmon ("Representative Plaintiffs") and Defendant ENV Services, Inc. ("Defendant") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations before a third-party neutral mediator.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), as well as its Exhibits: A (Notice of Settlement) and B (list of Opt-In Plaintiffs);

**Exhibit 2**: Declaration of Robi J. Baishnab; and,

**Exhibit 3**: Proposed Order approving settlement.

1

**MEMORANDUM IN SUPPORT**

I.      **FACTUAL AND PROCEDURAL BACKGROUND.**

      A.  **Summary of the Claims and Defenses.**

Representative Plaintiffs and the Opt-In Plaintiffs worked for Defendant as field service technicians.[1] This matter concerned allegations of unpaid overtime, arising from Defendant's alleged misclassification of Representative Plaintiffs and the Opt-In Plaintiffs as being exempt from state and federal overtime requirements.[2]

Throughout the litigation Defendant vigorously denied any liability and contested all allegations. While Plaintiffs felt strongly about their claims and Defendant feels strongly about its defenses, the Parties reached a settlement, the terms of which are encompassed in the attached Collective Action Settlement Agreement and Release.[3]

      B.  **Summary of the Procedural History.**

On December 8, 2020, Representative Plaintiff Kain filed a wage and hour collective action complaint in the Southern District of Ohio, Eastern Division, against Defendant ENV Services, Inc. ("the Action"). Representative Plaintiff Kain brought the Action under the Fair Labor Standards Act ("FLSA") and O.R.C. § 2307.60.[4] Defendant filed its Answer on January 4, 2021, in which it denied all claims asserted in the Action.[5]

Representative Plaintiff Kain filed an Amended Complaint on January 25, 2021, adding (1) Jeffrey Salmon as a Representative Plaintiff and adding Rule 23 New York and New Jersey

---

[1] Amended Complaint, ECF No. 9 at ¶¶18-21.

[2] *Id*. at ¶27.

[3] **Ex. 1**.

[4] ECF No. 1.

[5] ECF No. 5.

class action overtime claims pursuant to the New York Minimum Wage Act, Labor Law § 650 *et seq.*, the New York Wage Payment Act, Labor Law § 190 *et seq.*, and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142, as well as New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*[6]

Defendant filed its Answer to the Amended Complaint on February 15, 2021, in which it continued to deny all claims asserted in the Action.[7]

On April 14, 2021, pursuant to the Parties' stipulation, the Court conditionally certified the following FLSA collective class:

> All former and current Field Service Technicians, On-site Calibration Technicians, Field Calibration Technicians, and those with similar duties but different titles (collectively "Field Technicians"), employed by Defendant from December 8, 2017, through the final disposition of this matter.[8]

To avoid the burden, expense, risk, and uncertainty of litigation, the Parties agreed to engage in Mediation.[9] On November 8, 2021, the Parties mediated before third-party neutral John S. Marshall.[10] Subsequent to Mediation, the Parties reached an agreement and filed their Joint Notice of Settlement on January 12, 2022.[11]

At the time of settlement, thirty (30) Opt-In Plaintiffs, as well as Representative Plaintiffs, had submitted a Consent to Join form, which were filed with the Court.[12]

---

[6] ECF No. 9. The amendment also removed the count for damages under O.R.C. § 2307.60.

[7] ECF No. 11.

[8] ECF No. 13.

[9] ECF No. 23 at PAGEID #: 123, ¶3.

[10] ECF No. 30.

[11] ECF No. 31.

[12] ECF Nos. 8, 14 to 20.

### C. Summary of the Key Settlement Terms.

In preparation for Mediation, Plaintiffs' Counsel engaged the services of a PhD economist to construct a damages model. The model was built using the payroll data produced by Defendant. Certain assumptions and extrapolations were made where there was any data missing. The model included a toggle field, by which Plaintiffs' Counsel could input approximate unpaid hours to calculate estimated damages. The model was shared with the Mediator.[13]

The total settlement amount is **$125,000.00**.[14] This amount includes: (1) all Settlement Awards to Plaintiffs (as defined in the Agreement); (2) Service Payments of **$1,500.00** to each Representative Plaintiff; and (3) Plaintiffs' Counsel's attorneys' fees of one-third (1/3) and reimbursement of litigation expenses. The total settlement amount does not include the cost of settlement administration or Defendant's typical employment deductions from wages. Also, mediator fees have been paid by Defendant outside of the Fund.[15]

#### 1. Settlement Notice.

A Notice of Settlement (attached as Exhibit A to the Agreement) will be sent to the Opt-In Plaintiffs along with their settlement payments.[16]

#### 2. Allocation of the Settlement Fund.

As outlined in the Agreement, after deducting attorney's fees, litigation costs, and Service Payments, the remaining net amount will be allocated towards individual settlement payments which will be calculated on a *pro rata* basis, determined by each Plaintiff's number of weeks

---

[13] Baishnab Decl. at ¶13.

[14] **Ex. 1**, Settlement Agreement at ¶14.

[15] *Id.* at ¶¶14, 18, 26, 30.

[16] *Id.* at ¶¶ 16, 37.

worked during the Covered Period.[17] In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and the Plaintiffs will release Defendant from the Released Claims, as defined in the Agreement.[18]

## II.   PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA, 29 U.S.C. § 216(b), "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

---

[17] *Id.* at ¶26; Baishnab Decl. at ¶14.

[18] **Ex. 1**, Settlement Agreement at ¶¶8, 20-21, 26, 48-50.

See *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14; and *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)). The settlement in this case satisfies each of these elements.

### 1. No Indicia of Fraud or Collusion Exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

The Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a neutral mediator. In fact, final settlement did not occur until several weeks following mediation.[19] As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

---

[19] Baishnab Decl. at ¶15.

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, including written discovery and depositions that could span across multiple states. Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.[20]

### 3. Investigation was sufficient to allow the Parties to act intelligently.

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced class wide payroll data, from which a damages model was built by the PhD economist engaged by Plaintiffs' Counsel. The model included a toggle field, by which Plaintiffs' Counsel could approximate unpaid hours to calculate estimated damages. The model was shared with the Mediator.[21]

### 4. The risks of litigation favor approval.

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs alleged a company-wide policy and practice of misclassifying field service technicians as exempt from overtime. Throughout the litigation, Defendant disputed all claims and asserted a number of defenses. The Parties disagree as to whether Plaintiffs were misclassified, whether or to what degree any overtime was worked, whether the two- or three-year limitations period applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively.[22]

---

[20] Baishnab Decl. ar ¶15.

[21] *Id.* at ¶13.

[22] *Id.* at ¶15.

If this case had not settled, recovery may have been less, or, it is possible that there would be no recovery at all for the Plaintiffs.[23]

### 5. The opinion of Plaintiffs' Counsel favors approval.

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they acted in good faith and vigorously represented the interests of Plaintiffs.[24] "The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright*, 2018 U.S. Dist. LEXIS 140019, at *11 (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Settlement reflects substantial benefit to Plaintiffs. For example, the total settlement amount reflects approximately more than 4.6 hours of unpaid overtime per workweek, and the average individual settlement payment after deducting for fees, costs, and service payments is estimated to be more than $2,500.[25]

Before the Mediation, Plaintiffs' Counsel spent a significant amount of time doing an expected value calculation, using a decision tree software called TreeAge Pro©. In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss (*i.e.*, decertification, summary judgment, trial, good-faith, willfulness, etc.) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to

---

[23] *Id.*

[24] *Id.* at ¶¶3 to 11; 16.

[25] Baishnab Decl. at ¶17.

8

the damages model. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture and economic value of the case collectively.[26]

The total settlement amount exceeded the calculated expected value. Accordingly, settlement is a very good outcome for Plaintiffs[27] and this factor favors approval of the settlement.

### 6. The Reaction of Absent Class Members.

In this case, there are no absent class members. By submitting their Consent to Join forms, which have been filed with the Court, each Plaintiff has already agreed to join this case and be bound any settlement approved by the Court.[28]

### 7. The Public Interest.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13 and *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement Collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

### B. The settlement distributions are fair and reasonable.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8,

---

[26] *Id.* at ¶18. The TreeAge calculated expected value can be shared with the Court for in camera review, if the Court so directs.

[27] *Id.*.

[28] 29 U.S.C. § 216(b); ECF Nos. 8, 14 to 20.

9

2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

### 1. The Individual Payments are fair, adequate, and reasonable.

As mentioned above, Plaintiffs' Counsel retained a PhD economist to analyze the class data provided by Defendant's Counsel. The total settlement amount reflects approximately more than 4.6 hours of unpaid overtime per workweek, and the average individual settlement payment after deducting for fees, costs, and service payments is estimated to be more than $2,500. Additionally, Settlement exceeded the calculated expected value.[29]

These calculations support Plaintiffs' Counsel experiential opinion that the proposed settlement is fair, adequate, and reasonable.

### 2. Representative Plaintiffs' Service Payments are proper and reasonable.

The Agreement provides for a service award of **$1,500.00** to each Representative Plaintiff, in addition to their individual settlement payments.[30] Courts routinely approve service awards and payments to representative plaintiffs in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

---

[29] Baishnab Decl. at ¶¶13, 17, 18.

[30] **Ex. 1,** Agreement at ¶30.

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, the Representative Plaintiffs each contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and to reach a settlement. They committed significant time responding to Plaintiffs' Counsel's inquiries and providing important facts, as well as being available and providing information during Mediation.[31] In addition, Representative Plaintiffs have agreed to a general release, with limited exceptions, against Defendant in exchange for their Service Payments.[32]

### 3. The attorney fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees

---

[31] Baishnab Decl. at ¶20.

[32] **Ex. 1,** Agreement at ¶48.

11

for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

The Agreement provides for payment of attorneys' fees to Plaintiffs' Counsel in the amount of **$41,666.67**, or one-third of the total settlement amount. A one-third fee amount "is a normal fee amount in a wage and hour case." [33]

This Court has recognized that an award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)) (internal quotations omitted).[34] "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355,

---

[33] *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)); *see, also, Ganci*, 2019 U.S. Dist. LEXIS 207645, *15 (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same).

[34] *See also Hixon v. MPW Indus. Servs.*, No. 2:20-cv-3361, 2021 U.S. Dist. LEXIS 107362, at *5 (S.D. Ohio May 11, 2021) ("The amount requested is typical for attorney's fees awarded in common fund, FLSA collective actions in this District"); *Campbell v. Wise Med. Staffing*, Case No. 2:18-CV-00493, 2020 U.S. Dist. LEXIS 253264, at *4 (S.D. Ohio Feb. 21, 2020) ("Court agrees and finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees"); and *Adams et al v. Frontier Railroad Services, LLC*, USD SD Ohio, Case No. 2:19-cv-00808 (Dkt. No. 43) ("The requested attorney's fees award, which is one-third of the common fund, is reasonable")).

12

2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (citing *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021) (internal quotations omitted)). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *Id.* (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d at 762.

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs, and expenses.[35] Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19; and *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig*., 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) (Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.") (further citation omitted).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10; and *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16.

Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee*

---

[35] Baishnab Decl. at ¶19.

*Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court should authorize reimbursement to Plaintiffs' Counsel of their out-of-pocket expenses incurred in this case.

Plaintiffs' Counsel should also be reimbursed for their litigation expenses, which as of the date of this Motion are **$2,495.70**.[36] "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

Litigation costs include the filing fee, service of process, correspondence and postage, and creation of the damages model.[37] Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

Defendants entered the Settlement and joined this Motion, and therefore, do not oppose the Service Payments, attorney's fees, or reimbursement of litigation costs.[38]

## III. CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive

---

[36] Baishnab Decl. at ¶21.

[37] Baishnab Decl. at ¶21.

[38] *Id.* at ¶22.

determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment; and (4) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| NILGES DRAHER LLC | REMINGER CO., L.P.A. |
|---|---|
| */s/ Robi J. Baishnab* <br> Robi J. Baishnab (0086195) <br> 1360 E. 9th St., Suite 808 <br> Cleveland, OH 44114 <br> Telephone: (216) 230-2955 <br> Facsimile: (330) 754-1430 <br> Email: rbaishnab@ohlaborlaw.com <br><br> Shannon M. Draher (0074304) <br> Hans A. Nilges (0076017) <br> 7034 Braucher Street, N.W., Suite B <br> North Canton, OH 44720 <br> Telephone: (330) 470-4428 <br> Facsimile: (330) 754-1430 <br> Email: sdraher@ohlaborlaw.com <br>        hans@ohlaborlaw.com <br><br> *Counsel for Plaintiffs* | */s/ Patrick Kasson (with permission)* <br> Patrick Kasson, Trial Attorney (0055570) <br> Thomas N. Spyker (0098075) <br> 200 Civic Center Drive, Suite 800 <br> Columbus, OH 43215 <br> (614) 228-1311 <br> Fax (614) 232-2410 <br> pkasson@reminger.com <br> tspyker@reminger.com <br><br> *Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this February 2, 2022. Parties may access this filing through the Court's system.

*/s/ Robi J. Baishnab*
Robi J. Baishnab

*Counsel for Plaintiffs*